

Residents of Camp Integrity- PRO SE
773 Lincoln Avenue, San Rafael CA 94901
PO BOX 2217, San Rafael CA 94912-2217
CampIntegritySanRafael@yahoo.com

**F I L E D**

AUG 1 1 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

DISTRICT OF NORTHERN CALIFORNIA

| | |
|---|---|
| SHALEETA BOYD, AMALIA MENDOZA, FLOYD BARROW, EDDY METZ, CHRISTIE COOK, ANKER AARDALEN, COURTNEY HUFF, JEFF GROVE, DONALD HENSLEY, CAMP INTEGRITY<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SAN RAFAEL,CRISTINE ALILOVICH, CHRIS HESS, DAVID SPILLER, AMY MILLER, KATE COLIN, ELI HILL,  MARIBETH BUSHEY, RACHEL KERTZ.<br><br>Defendant | Case No.: Number<br><br>**C23-04085  EMC**<br><br>VERIFIED COMPLAINT  AND EX PARTE APPLICATION  FOR TRO AND PI, NOTICE OF EXPARTE APPLICATION FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023<br><br>HEARING DATE: TBD<br><br>FILED CONCURRENTLY WITH INDEX OF EXHIBITS |

# Notice of Ex-Parte Application For TRO and PI and Verified Complaint

# For Injunctive relief

PARTIES OF RECORD, COUNSEL, and COURT  PLEASE TAKE NOTICE

A lawsuit has been filed against the City of San Rafael. A Complaint and concurrent Ex-Parte Motion for TRO and Preliminary Injunction and Attached Exhibits is being filed in the US District Court. A judge shall be assigned to this lawsuit and motion, and a hearing date set on PLAINTIFFS motion for TRO. Upon receipt of a case number, the case number shall be emailed to your counsel so you may file a response on the docket.

VERIFIED COMPLAINT  AND EX PARTE APPLICATION  FOR TRO AND PI, NOTICE OF EXPARTE APPLICATION FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023HEARING DATE: TBDFILED CONCURRENTLY WITH INDEX OF EXHIBITS - 1

IN MEMORY OF JIMMY SANDERS

Jimmy Sanders intended on participating in this lawsuit, but died in his tent at Camp Integrity on July 29th. Jimmy was "number 1 lumper" when he used to work unloading big rigs at the port of Oakland when he was a young man. After he was a victim of a catastrophic car crash caused by a man fleeing from police, Jimmy became disabled which over the course of several years lead him into homelessness. He was kind, generous spirit and his death is both a loss for our community, and for this action before the court. We remember and honor you Jimmy Sanders.



*In Loving Memory*

Jimmy Sanders
07.22.1959 - 07.29.2023

VERIFIED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PI, NOTICE OF EXPARTE APPLICATION FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023 HEARING DATE: TBD FILED CONCURRENTLY WITH INDEX OF EXHIBITS - 2

Table of Contents

*Notice of Ex-Parte Application For TRO and Verified Complaint For Injunctive relief*...................................................................................................*1*

*Our Case In A Nutshell: City of San Rafael Implementing Unconstitutional Ordinance Endangering the Health, Safety, and Civil Liberties of All Unhoused People in the City Starting August 16th*...................................................................................................7

*Parties*...................................................................................................8

**Plaintiff Shaleeta Boyd**...................................................................................................8

**Plaintiff Amalia Mendoza**...................................................................................................9

**Plaintiff Floyd Barrow**...................................................................................................9

**Plaintiff Eddy Metz**...................................................................................................9

**Plaintiff Christie Marie Cook**...................................................................................................9

**Plaintiff Anker Aardalen**...................................................................................................9

**Plaintiff Courtney Huff**...................................................................................................9

**Plaintiff Jeff Grove**...................................................................................................10

**Plaintiff Donald Hensley**...................................................................................................10

**Plaintiff Brian Nelson**...................................................................................................10

**Plaintiff Camp Integrity**...................................................................................................10

**Defendants**...................................................................................................11

**Defendant City of San Rafael**...................................................................................................11

**Defendant Cristine Alilovich,**...................................................................................................11

**Defendant David Spiller,**...................................................................................................11

Defendant Chris Hess,..................................................................11

Defendant Amy Miller.................................................................11

Defendant Kate Colin ................................................................11

Defendant Eli Hill .......................................................................12

Defendant Rachel Kertz .............................................................12

Defendant Maribeth Bushey .......................................................12

*Jurisdiction and Venue..............................................................12*

*Statement of Facts: City of San Rafael Passes Criminal Dragnet For Unhoused People To Be Implemented on August 16th ........................................12*

*Plaintiffs Have Served Defendants This Complaint Instant Motion..................14*

*Ex-Parte Application For TRO: Standard of Review .........................................14*

*First Cause of Action 42 USC §1983 Violation of Eighth Amendment: Criminalization of Involuntary Status. (By All Plaintiffs Against All Defendants) .................15*

*Second Cause of Action Violation 42 USC § 1983 Fourteenth Amendment Void for Vagueness Doctrine: No Reasonable Person Would Be Able to Understand What Conduct Is Criminalized and What Is Allowed Under SMC 19.50 and SMC 19.20.080(c) ......................20*

*SMC 19.50 and SMC 19.20.080(c) Are a Legal Dragnet That Criminalizes Repetitiously Eating Food, Possessing Backpacks and Other Innocent Conduct For People Experiencing Homelessness .............................................................21*

*City of San Rafael  Tries To Justify Its Legal Dragnet With An "Exception" Which City Officials Refuse to Make A Standard For. ...........................................22*

VERIFIED COMPLAINT  AND EX PARTE APPLICATION  FOR TRO AND PI, NOTICE OF EXPARTE APPLICATION FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023HEARING DATE: TBDFILED CONCURRENTLY WITH INDEX OF EXHIBITS - 4

*SMC 19.50.020 (A) Does Not Have The Mens Rea or Scienter Requirement For Criminal Prosecution* ........................................................................................................**23**

*Third Cause of Action 42 USC §1983 – Violation of the  First Amendment Claim For Freedom of Assembly And Association Because Constitutional Protected Expressive Activities and Free Association are Criminalized to an Unascertainable Standard.* ...............................................................................................................................**24**

*Fourth Cause of Action 42 USC § 1983 – Violation of Article 1 Section 9 Clause 3 Bill of Attainder Because SMC §§19.50 SMC 19.20.080(c) Punishes A Definable Group With Extra-Juidicial Punishment While Allowing Other Plausible Suspects To Engage In Identical Behavior. (All Plaintiffs Against All Defendants)* ....................................................**26**

*Fifth Cause of Action 42 USC § 1983 Fourteenth Amendment Equal Protection Claims Because the Laws Only Apply To People Who Are Unhoused While Allowing People With Housing To Engage in Identical Conduct  (All Plaintiffs Against All Defendants)* ........**28**

*Sixth Cause of Action : Violation American With Disabilities Act Because SMC 19.50 and 19.20.080(c) Disparately Impact Plaintiffs With Disabilities: ( Brian Nelson, Amalia Mendoza, Christy Cook, Eddy Metz, and Ankor Aardalen, Against All Defendants)* ................**29**

*Seventh Cause of Action 42 USC § 1983-  Fourteenth Amendment Claim Under The State Created Dangers Doctrine Because SMC §§19.50 and SMC §19.20.080© Will Deprive Plaintiffs of Access to Food, Water Shade, Bathroom, and Will Result in the Destruction of Plaintiffs Survival Gear and Camp Integrity.* .........................................................**31**

VERIFIED COMPLAINT  AND EX PARTE APPLICATION  FOR TRO AND PI, NOTICE OF EXPARTE APPLICATION FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023HEARING DATE: TBDFILED CONCURRENTLY WITH INDEX OF EXHIBITS - 5

*SMC 19.50 and SMC 19.20.080(c) will Increase Drug Overdoses By 15-25% over the next 10 years, accounting for around 1-4 deaths of unhoused people who otherwise could have survived and gone on to secure permanent housing.* .......................................................................... 32

*SMC 19.50 and SMC 19.20.080(c) will Isolate Victims of Human Trafficking and Domestic Violence and Will Greatly Increase The Likliehood They Are Victims of Rape, Human Trafficking, and Other Forms of Violence.* ......................................................................... 33

*SMC 19.50 and SMC 19.20.080(c) will Destroy Camp Integrity, and Result in People Being Deprived of Bathrooms There, as well as food water and other necessities of life.* .................... 34

*If the Court Does Not Intervene Plaintiff Will Suffer Irreparable Harm, Including Injury and Death Caused by Complications To Severe Medical Conditions.* ............ 35

*Balance of Equities and Public Interest Both Tip Sharply in Plaintiffs Favor Because Defendants Are Failing To Genuinely Educate Plaintiffs About What SMC §§19.50 and 19.20.080( c) Will Actually Criminalize.* ............................................................. 36

*Conclusion* ..................................................................................................... 37

*Prayer for Relief* .............................................................................................. 37

*Verification* ..................................................................................................... 37

# Our Case In A Nutshell: City of San Rafael Implementing Unconstitutional Ordinance Endangering the Health, Safety, and Civil Liberties of All Unhoused People in the City Starting August 16th

1. **Plaintiffs** are unhoused people in the **City of San Rafael**.[1] All **Plaintiffs** are requesting help obtaining housing or temporary shelter (**See Declaration, Attached Exhibits Labeled "Request for Shelter Accomodations"** The shelters across the whole County of Marin are full according the CEO of the County's only shelter operator Homeward Bound in a July 22nd Interview with the *Pacific Sun* (**See Dec Powelson, Exhibit B). Plaintiffs Eddy Metz and Anker Aardalen** suffer from severe injuries that make it extremely difficult to walk. **Plaintiffs** have no alternative shelter other than their tents at **Camp Integrity** – an organized camp that provides its members bathrooms and mutual support.

2. **If Plaintiffs** lives were not hard enough already, On July 17th, the **City of San Rafael** passed an ordinance the San Rafael Municipal Code §§19.50 and amending SMC §19.20.080 © that redefined a criminally prosecutable offense of "camping". The Ordinance only defines people who are unhoused i.e. people "who use public property for living accommodations". It defines camping as "repetitiously... consuming meals" or "repetitiously... possessing backpacks" (See SMC 19.50). For unhoused people, it absolutely prohibits them from "repetitiously... consuming meals" and "repetitiously... possessing backpacks" on sidewalks, open spaces, and parks. It also seems to prohibits unhoused people from repetitiously consuming meals close to one another within 200 feet of one another. The infraction for violating these broad ordinances – that could be violated by having lunch – is a penalty of up to six months in jail and $500 fine.

3. SMC 19.50 is connected with a code SMC 19.20.080 which makes it an infraction or misdemeanor for any behavior that is in contravention to SMC §§19.50, hence the criminal liability and why this application

---

[1] The only exception is Courtney Huff, who intermittedly lives at **Camp Integrity** for her personal survival due to issues surrounding domestic violence and human trafficking.

VERIFIED COMPLAINT  AND EX PARTE APPLICATION  FOR TRO AND PI, NOTICE OF EXPARTE APPLICATION  FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023HEARING DATE: TBDFILED CONCURRENTLY WITH INDEX OF EXHIBITS - 7

1     seeks to restrain implementation of both ordinances in tandem.

2   4.  No reasonable person can understand what conduct is prohibited and what is not. Acknowledging that fact,

3       Assistant City Manager and Director of Homeless Services **Chris Hess** said at the July 17 City Council

4       meeting stated "Between the date in which [the ordinance is adopted] and the time from when its

5       implemented, we would begin right away with an education  program for the homeless community

6       involving all of our service, we would be providing notice about all of the new rules."

7   5.  The ordinance will be implemented in 6 days – and no education has been provided except a confusing

8       flyer [See **Dec Brian Nelson Exhibit D**] . **Defendants** new ordinance will intensify danger policies against

9       **unhoused people** that has resulted in district judge Yvonne Gonzales Rogers to issue two separate

10      restraining orders against the City of San Rafael halting dangerous evictions of encampments this year

11      alone  [See *Rivera v City of San Rafael et al* 4:23-cv-03804-YGR and *Hughes et al v Hess et al* 4:23-cv-

12      01063-YGR][2]

13  6.  With no genuine clarification of the ordinance **Plaintiffs** can only rely on the text of the ordinance itself,

14      and therefore seek to restrain the **City of San Rafael** from implementing what can only be described as a

15      legal dragnet that will subject every unhoused person in **San Rafael** to citation, arrest, and seizure of the

16      belongings for innocent conduct, sharing meals, possessing backpacks, engaging in free association, and

17      taking rudimentary precautions to protect themselves on all parts of the City.

18

19                                      ## Parties

20

21  **Plaintiff Shaleeta Boyd**

22  is an unhoused mother living at Camp Integrity

23  PO BOX 2217, San Rafael CA 94912-2217

24

25                    _____

26

27  [2] Plaintiff Floyd Barrow in this case was also a plaintiff in *Hughes et al v Hess et al* 4:23-cv-01063-YGR
    VERIFIED COMPLAINT  AND EX PARTE APPLICATION  FOR TRO AND PI, NOTICE OF EXPARTE
28  APPLICATION  FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN
    RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023HEARING DATE:
    TBDFILED CONCURRENTLY WITH INDEX OF EXHIBITS - 8

CampIntegritySanRafael@yahoo.com

**Plaintiff Amalia Mendoza**

is an unhoused women living at Camp Integrity

PO BOX 2217, San Rafael CA 94912-2217

628-235-8938

CampIntegritySanRafael@yahoo.com

**Plaintiff Floyd Barrow**

is an unhoused Navy Veteran living at Camp Integrity

PO BOX 2217, San Rafael CA 94912-2217

CampIntegritySanRafael@yahoo.com

415-532-4918

**Plaintiff Eddy Metz** a senior suffering from chronic disabilities living at Camp Integrity

PO BOX 2217, San Rafael CA 94912-2217

CampIntegritySanRafael@yahoo.com

415-497-6524

**Plaintiff Christie Marie Cook** is unhoused living with schizoaffective disorder and caregiving for her

boyfriend Anker Aardalen who is confined in a wheel chair.

PO BOX 2217, San Rafael CA 94912-2217

CampIntegritySanRafael@yahoo.com

**Plaintiff Anker Aardalen** is unhoused man who is currently confined to wheelchair due to a severe knee

injury.

PO BOX 2217, San Rafael CA 94912-2217

CampIntegritySanRafael@yahoo.com

**Plaintiff Courtney Huff** is a women who periodically lives at Camp Integrity because she is periodically

displaced from her housing due to domestic violence and human trafficking.

VERIFIED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PI, NOTICE OF EXPARTE
APPLICATION FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN
RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023HEARING DATE:
TBDFILED CONCURRENTLY WITH INDEX OF EXHIBITS - 9

1  PO BOX 22 17, San Rafael CA 94912-2217

2  CampIntegritySanRafael@yahoo.com

3  **Plaintiff Jeff Grove** is a resident of Camp Integrity who operates an impromptu cooling center for the camp.

4  PO BOX 2217, San Rafael CA 94912-22 17

5  CampIntegritySanRafael@yahoo.com

6  415-724-1822

7  **Plaintiff Donald Hensley** is a resident of Camp Integrity who lost his home when the government destroyed

8  the boat he was living.

9  PO BOX 2217, San Rafael CA 94912-22 17

10 CampIntegritySanRafael@yahoo.com

11 415-532-9846

12 **Plaintiff Brian Nelson** is a resident of Camp Integrity who has saved several people from overdose through

13 application Narcan and Adrenaline shots.

14 PO BOX 2217, San Rafael CA 94912-22 17

15 Bknelson10@yahoo.com

16 CampIntegritySanRafael@yahoo.com

17 415-879-0766

18 **Plaintiff Camp Integrity** is an unincorporated association of people and their property, and a collectively

19 funded bathroom and handwashing station located at 773 Lincoln Ave, San Rafael. **Camp Integrity** is represented

20 collectively by **Plaintiffs**.

21 PO BOX 2217, San Rafael CA 94912-2217

22 CampIntegritySanRafael@yahoo.com

27 VERIFIED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PI, NOTICE OF EXPARTE
28 APPLICATION FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN
RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023HEARING DATE:
TBDFILED CONCURRENTLY WITH INDEX OF EXHIBITS - 10

1

## Defendants

2

**Defendant City of San Rafael** is a municipal corporation located in Marin County California.

3

Address: 1400 Fifth Street, San Rafael CA, 94901

4

Counsel: Robert Epstein <rob.epstein@cityofsanrafael.org

5

6

**Defendant Cristine Alilovich,** is the City Manager of City of San Rafael and is sued in their individual and

7

official capacity.

8

Address: 1400 Fifth Street, San Rafael CA, 94901

9

Counsel: Robert Epstein <rob.epstein@cityofsanrafael.org

10

**Defendant David Spiller,** is Chief of Police of the City of San Rafael Police Department and is sued in his

11

official and individual capacity.

12

Address: 1400 Fifth Street, San Rafael CA, 94901

13

Counsel: Robert Epstein <rob.epstein@cityofsanrafael.org

14

**Defendant Chris Hess, is** Assistant City Manager of City of San Rafael and director of homeless services and

15

is sued in his individual and official capacity.

16

Address: 1400 Fifth Street, San Rafael CA, 94901

17

Counsel: Robert Epstein <rob.epstein@cityofsanrafael.org

18

**Defendant Amy Miller** Director of Public Works for City of San Rafael and is sued in her individual and

19

official capacity.

20

Address: 1400 Fifth Street, San Rafael CA, 94901

21

Counsel: Robert Epstein <rob.epstein@cityofsanrafael.org

22

**Defendant Kate Colin** is Mayor of the City of San Rafael and is sued in her individual and official capacity for

23

passing a bill of attainder.

24

Address: 1400 Fifth Street, San Rafael CA, 94901

25

Counsel: Robert Epstein <rob.epstein@cityofsanrafael.org

26

27

VERIFIED COMPLAINT  AND EX PARTE APPLICATION  FOR TRO AND PI, NOTICE OF EXPARTE APPLICATION FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023HEARING DATE: TBDFILED CONCURRENTLY WITH INDEX OF EXHIBITS - 11

28

**Defendant Eli Hill** is a City Council Person of the City of San Rafael and is sued in their individual and official capacity for passing a bill of attainder.

Address: 1400 Fifth Street, San Rafael CA, 94901

Counsel: Robert Epstein <rob.epstein@cityofsanrafael.org

**Defendant Rachel Kertz** is a City Council Person of the City of San Rafael and is sued in their individual and official capacity for passing a bill of attainder.

Address: 1400 Fifth Street, San Rafael CA, 94901

Counsel: Robert Epstein <rob.epstein@cityofsanrafael.org

**Defendant Maribeth Bushey** is a City Council Person of the City of San Rafael and is sued in their individual and official capacity for passing a bill of attainder.

Address: 1400 Fifth Street, San Rafael CA, 94901

Counsel: Robert Epstein <rob.epstein@cityofsanrafael.org

## Jurisdiction and Venue

This Court has original jurisdiction under 42 USC § 1983 and under the Americans With Disabilities Act Title II.

## Statement of Facts: City of San Rafael Passes Criminal Dragnet For Unhoused People To Be Implemented on August 16th

1. Based on information and belief, plaintiffs allege the following: Around June 2023, San Rafael Assistant City Manager **Chris Hess,** San Rafael City Manager **Cristine Alliovich,** San Rafael Police Chief **David Spiller,** San Rafael Director of Public Works **April Mills** communicated through a series meetings and electronic communications to discuss changing the **City of San Rafael** ordinances regulating the public use of property by people who are do not have housing and live outside.

VERIFIED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PI, NOTICE OF EXPARTE APPLICATION FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023HEARING DATE: TBDFILED CONCURRENTLY WITH INDEX OF EXHIBITS - 12

2. **Hess, Alliovich, Spiller, and Mills** decided that the proposed ordinance would single out unhoused people for criminal sanctions for conduct that would not be criminalized for people who did have housing. For example, it would allow people with housing to erect tents and have "picnics" but would deem the exact same conduct by an unhoused person as criminal offense of "camping".

3. Their proposed ordinance would also compel unhoused people to camp 200 feet away from one another.

4. At the end of June, **Hess, Alliovich, Spiller, and Mills** came to an agreement among themselves about modifying **City of San Rafael** adding Chapter 19.50 to the city's municipal code.

5. **Chris Hess** submitted that proposed amendment to **Christine Alliovich,** who approved it to be submitted to the **City of San Rafael** city council for ratification.

6. On July 17th, 2023 the ordinance was ratified unchanged by the **City of San Rafael City Councilmembers Kate Colin, Eli Hill, Maribeth Bushey, and Rachel Kertz**

7. Unless enjoined by this court, the ratified ordinance will go in effect on August 16th 2023.

8. A copy of the SMC§§ 19.50 is shown in **Exhibit A.**

9. The passage SMC §§19.50 also amended the definition "Camping" in 19.20.080(C). Under the new provisions, SMC §19.20.080 (C) is combined with definitions in SMC 19.50.

10. Through SMC §19.20.080 (C ), engaging in "unlawful camping" is subject to the enforcement provisions of SMC §19.20.110. Those enforcement provisions includes criminal prosecution as a misdemeanor or infraction under SMC §1.42.010.

11. The powers spelled out in SMC §1.42.010, means that a violation §§19.50 and § 19.20.080(c) includes up to six months in jail and a $500 dollar fine.

12. A true and correct copy of the Title 19.20 of the San Rafael Municipal Code, including 19.20.080(c ) and 19.20.110, is shown in **Exhibit B**

13. A true and correct copy of the Title 1.42 of the San Rafael Municipal Code, including 1.42.010 is shown in **Exhibit C**

# Plaintiffs Have Served Defendants This Complaint Instant Motion

14. **Plaintiffs** now sue to halt the implementation above the above conduct. **Defendants** been served notice of this complaint motion on August 10th [See Proof of Service]. Plaintiffs have been on notice that a legal challenge to the ordinance since July 28th [See Dec Mendoza ¶21]

## Ex-Parte Application For TRO: Standard of Review

15. "A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A)." Quoting from *Sacramento Homeless Union et al v City of Sacramento et al* 2:22-cv-01095-TLN-KJN Dkt. No. 39 *(*August 3rd 2023 Order GRANTING TRO). To obtain a preliminary injunction, the plaintiff has the burden to "establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). Under the sliding-scale approach adopted by the Ninth Circuit in Alliance for the *Wild Rockies v. Cottrell,* 632 F.3d 1127, Courts must weigh these factors using a "sliding scale" approach such that where there are "serious questions going to the merits," a preliminary injunction may still be issued so long as "the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied." *Short v. Brown,* 893 F.3d 671, 675 (9th Cir. 2018) (quoting *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011.) To determine whether to issue a TRO, the courts in the Ninth Circuit apply the same analysis used to evaluate a motion for preliminary injunction. *McCarthy v. Servis One, Inc.* 2017 U.S. Dist. LEXIS 32622, at 9-10(N.D. Cal. Mar. 7. 2017)

16. Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. See *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, n. 7 (9th Cir. 2001). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and

VERIFIED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PI, NOTICE OF EXPARTE APPLICATION FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080 (C) ON AUGUST 16TH 2023HEARING DATE: TBDFILED CONCURRENTLY WITH INDEX OF EXHIBITS - 14

1    preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." See *Granny*

2    *Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

3    District Courts  have wide discretion in issuing TROs in order to support due process and uphold the

4    judicial review. Reflecting that policy, the Ninth Circuit generally does not accept appeals TROs  (see *E.*

5    *Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 762 (9th Cir. 2018) (order) ("Ordinarily, a TRO is not an

6    appealable order.").

7    17. **Plaintiff** have standing to halt the impending violation of our civil rights of the planned implementation of

8        SMC §§19.50 and SMC 19.20.080 © on August 16th. "One may seek to enjoin an impending constitutional

9        violation, *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983), *Babbitt v. United Farm Workers Nat'l*

10       *Union*, 442 U.S. 289, 298 (1979). a citizen does not have to wait for consummation of an order

11       appropriating property to challenge it on constitutional grounds. See *Horne v. Dep't of Agric.*, 576 U.S.

12       350, 360–62 (2015); see also *Pakdel v. City & Cnty. of San Francisco*, 141 S. Ct. 2226 (2021) (a taking

13       claim ripens when government arrives at a final decision).

# First Cause of Action 42 USC §1983 Violation of Eighth Amendment: Criminalization of Involuntary Status. (By All Plaintiffs Against All Defendants)

18. The Eighth Amendment prohibition against cruel and unusual punishment "imposes substantive limits on

    what can be made criminal and punished as such." *Ingraham v. Wright*, 430 U.S. 651, 667-68 (1977).

19. The Supreme Court has interpreted the scope of those limitations to find that laws criminalizing an

    individual's status, rather than specific conduct, are unconstitutional. See, e.g., *Robinson v. California*, 370

    U.S. 660, 666-67 (1962) (striking down a state statute that made it a criminal offense to be addicted to

narcotics on the ground that it made an addicted person "continuously guilty of [the] offense, whether or not he has ever used or possessed any narcotics within the state, and whether or not he has been guilty of any antisocial behavior there." Such a statute would be akin to a law making "it a criminal offense for a person to be mentally ill, or a leper, or to be afflicted with a venereal disease," and would "be universally thought to be an infliction of cruel and unusual punishment."). Id.

20. The Ninth Circuit has extended the protections of Eighth Amendment prohibitions on criminalization of status to people who are involuntarily homeless. In *Martin V Boise* articulated that the prohibition against criminal zing people based on involuntary homelessness to be unconstitutional. "the principle ... that the Eighth Amendment prohibits the state from punishing an involuntary act or condition if it is the unavoidable consequence of one's status or being." Id. This line was recently reaffirmed in *Johnson v City of Grants Pass,* and expanded to include Eighth Amendment protections, holding that City's "cannot enforce its anti-camping ordinances to the extent they prohibit "the most rudimentary precautions a homeless person might take against the elements"

21. The passage SMC 19.50 also amended the definition "Camping" in 19.20.080(C). Under the new provisions, SMC 19.20.080 (C) is combined with definitions in SMC 19.50.

22. Through SMC 19.20.080 (C ), engaging in "unlawful camping" is subject to the enforcement provisions of SMC 19.20.110. Those enforcement provisions includes criminal prosecution as a misdemeanor or infraction under SMC 1.42.010.

23. The powers spelled out in SMC 1.42.010, means that a violation SMC §§ 19.50 via § 19.20.080(c) includes up to six months in jail and a \$500 dollar fine.

24. By transference, violating SMC 19.50 simultaneously activates SMC 19.20.080(c) and is therefore punishable by up to six months in jail.

25. A true and correct copy of the Title 19.20 of the San Rafael Municipal Code, including 19.20.080(c ) and 19.20.110, is shown in **Exhibit B**

26. A true and correct copy of the Title 1.42 of the San Rafael Municipal Code, including 1.42.010 is shown in **Exhibit C**

27. SMC 19.50 and SMC 19.20.080(C) together violate the Eighth Amendment because the only issues penalties based on peoples housing status. If a housed person repetitively consumes meals at a park bench "ordinary recreational use" - but if a homeless person who perpetually uses public spaces for "living accommodations" eats a sandwich at the same bench everyday they could be designated as "camping" and exposed to criminal liability.

28. Because of the over vague language of "living accommodation" versus "recreational use" the ordinance creates criminal liability on unhoused people at all times, for engaging innocent and involuntary conduct such as repetitiously consuming meals and repetitiously possessing backpacks on public property on all properties in San Rafael, even though no shelter is available.

29. This violates the holding in *Martin v. City Boise*,902 F.3d 1031, 1048 (9th Cir. 2018).that the "Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping,or lying outside on public property for homeless individuals who cannot obtain shelter."

30. It also violates the Eighth Amendment under *Robinson v. California* , 370 U.S. 660, 666-67 (1962) because it makes unhoused people "lepers" - who face criminal punishment for consuming meals repetitiously on public property while people who have housing can repetitively consume meals as much as they want without fear of criminal penalties

31. In *Robinson,* the Supreme Court struck down a state statute that made it a criminal offense to be addicted to narcotics on the ground that it made an addicted person "continuously guilty of [the] offense, whether or not he has ever used or possessed any narcotics within the state, and whether or not he has been guilty of any antisocial behavior there." Such a statute would be akin to a law making "it a criminal offense for a person to be mentally ill, or a leper, or to be afflicted with a venereal disease," and would "be universally thought to be an infliction of cruel and unusual punishment."). *Id*

32. San Rafael Municipal Code **19.50.020 (A)** defines camping. "Camp" or "Camping means using public property as a place of residence or for living accommodation purposes as evidenced by:

1                1.      *Remaining for prolonged repetitious periods of time, <u>not associated with</u>*

2  *<u>ordinary recreational use of public property,</u> [Emphasis added] and.*

3                2.      *One or more of the following:*

4                        a.      *Possessing camp paraphernalia [such as a backpacks, luggage]; or*

5                        b.      *Using or erecting camp facilities or other form of shelter; or*

6                        c.      *Making a fire, cooking, or consuming a meal*

7                        d.      *Engaging in one or more of the following*

8                          i.      *Sleeping or making preparation to sleep including the laying down of*

9  *bedding for the purposes of sleeping); or*

10                      ii.      *Unattended storage of personal belongings, including storing camping*

11  *paraphernalia*

12  *The combined activities of (1) and (2) constitute camping when it reasonably appears in*

13  *light of all the circumstances, that a person is using public property as a living accommodation regardless*

14  *of their intent or the nature of other activities in which the person might also be engaged.*

15                **SMC 19.50.020 (C)** defines "Camp paraphernalia" means implements and equipment

16  used for temporary residence, including, camp facilities, tarpaulins, mattresses, sleeping bags, bedrolls,

17  blankets, sheets, pillows, luggage, backpacks, and cookware, cooking equipment, kitchen utilities, and

18  similar equipment.

19. 33. Under this ordinance, someone who lives outside due to lack of housing faces ongoing criminal liability for

20     almost any activity – including "consuming meals" and possessing "luggage" because they are using

21     public property as "living accommodations"

22 34. An unhoused person who comes to a park bench to eat lunch for would guilty under the two prong test for

23     defining "camping" under **SMC 19.50** because it would presence of "Repetitious periods of time...

24     consuming meals OR possessing backpacks... constitutes camping when it appears... that [they are] using

public property as living accommodation regardless of their intent or the nature of other activities in which the person might be engaged" could be cited for violating SMC 19.50 and SMC 19.20.080(c)

35. However a person who has housing and who eats a sandwich at the same bench everyday during their lunch break wouldn't violate the ordinance because it would not appear "they are using public property as living accommodations".

36. This criminalization of peoples housing status rather than the conduct they are engaged in is reaffirmed in other parts of the code. As is defined in San Rafael Muni Code **19.20.010(c)** "Camp" or "Camping" means "using a public place for living accommodation purposes... "Camp" or "camping" **shall not mean occupying camp facilities for temporary picnicking, recreating, or resting purposes"**. The point of this distinction for the City of San Rafael is creating a criminal penalty for people who eat, carry back packs, only if they are known to be homeless while allowing people who have housing to engage in identical conduct.

37. San Rafael again reaffirms its commitment to only criminalize status, and not conduct, in the final lines of SMC 19.50.020(A) *"The combined activities of (1) and (2) constitute camping when it reasonably appears in light of all the circumstances, that a person is using public property as a living accommodation regardless of their intent or the nature of other activities in which the person might also be engaged."*

38. This means if someone is known to be homeless, goes to a park to have a picnic, stops at a park bench to eat a sandwich - faces criminal liability even if they themselves don't consider themselves to be camping, or if their intent and the nature of their other activities .

39. To use the text of an ordinance, an unhoused person would be guilty of an infraction or misdemeanor for *"Remaining for prolonged repetitious periods of time, not associated with ordinary recreational use of public property, ... consuming a meal* OR *possessing a back pack* OR *similar equipment... when it reasonably appears...a person is using public property as a living accommodation regardless of their intent or the nature of other activities in which the person might also be engaged...*

40. This means that we and all other unhoused people are singled out for criminal liability because of our housing status, while other people with housing can engage in the identical conduct and not face consequences.

41. This distinguishment violates the jurisprudence established in *Robinson v. California*, 370 U.S. 660, 666-67 (1962) that undergirds *Johnson.* That this ordinance is fixated on criminalizing people for their status as being homeless, instead of actual conduct, and makes Plaintiffs continuously guilty of criminal violations because their status and therefore become "lepers"

42. At the same time, people who are housed can engage in the exact same conduct and will face no criminal liability because their identical conduct will be "recreational" rather than for "living accommodations".

# Second Cause of Action Violation 42 USC § 1983 Fourteenth Amendment Void for Vagueness Doctrine: No Reasonable Person Would Be Able to Understand What Conduct Is Criminalized and What Is Allowed Under SMC 19.50 and SMC 19.20.080(c) (All Plaintiffs Against All Defendants)

43. Plaintiff reincorporates the preceding paragraphs as if fully set forth herein.

44. An outgrowth of the Fourteenth Amendment due process clause is the Void-For- Vagueness Doctrine, which applies scrutiny to laws that inflict criminal punishment. "A statute is vague when the conduct it forbids is not ascertainable". See *Chicago* v. *Morales*, 527 U. S. 41, 56 (1999) (striking down an ordinance that barred alleged gang members from associating in public) See Also *Coates v. City*

1        *of Cincinnati*, 402 U.S. 611 (1971) (striking down an ordinance criminalizing three or more people

2        loitering together).

3    45. A vague statute often occurs when a statue creates a "dragnet" that criminalizes constitutionally

4        protected behavior *and* behavior a city can normally prohibit (*Gregory v. City of Chicago*, 394

5        U.S. 111 (1969) (BLACK concurring) (Holding that criminal prohibitions must be narrowly tailored

6        to achieve state interests)

7    46. Vagueness is also closely related to whether that standard fails to incorporate *mens rea* and

8        *scienter* elements to criminal prosecution (see *United States v. United States Gypsum Co., 438*

9        *U.S. 422 (1978) See also Colautti v. Franklin, 439 U.S. 379 (1979)*.

10   47. The burden is on the government to establish standards for the laws it enforces, and evidence of

11       vagueness can be shown by a failure to show "persistent efforts . . . to establish a standard"

12       *United States* v. *L. Cohen Grocery Co.,* 255 U. S. 81, 91 (1921) (Quoting from Johnson v. United

13       States, 576 U.S.(2015))

14   ***SMC 19.50 and SMC 19.20.080(c) Are a Legal Dragnet That Criminalizes***

15   ***Repetitiously Eating Food, Possessing Backpacks and Other Innocent Conduct For***

16

17   ***People Experiencing Homelessness***

18

19   48. Plaintiff reincorporates the preceding paragraphs as if fully set forth herein.

20

21   49. For SMC 19.50. The operative terms that define criminal and non-criminal activity for camping are

22       "living accommodation" and "ordinary recreational use". These vagues terms are at least as

23       imprecise as criminal prohibitions on conduct the Supreme Court has declared void for

24       vagueness in past decades In *Coates* v. *Cincinnati,* 402 U. S. 611 (1971), the Court struck down

25       a municipal ordinance making it a criminal offense for "three or more persons to assemble ... on

26       any of the sidewalks ... and there conduct themselves in a manner annoying to persons passing

27       by .... " *Ibid.* The Court held the ordinance to be unconstitutionally vague because "it subject[ed]

the exercise of the right of assembly to an unascertainable standard, and [was] unconstitutionally broad because it authorize[d] the punishment of constitutionally protected conduct." *Id.*, at 614. Laying down blankets closing to one another, laying down in close proximity together, or sharing meals, are basically identical to the conduct that was protected in *Coates* and *Morales*.

50. SMC 19.50 has the exact same infirmity because "living accommodation" and "ordinary recreation use" are so vague that one person possessing a back pack or eating a meal could be criminally cited, while an identical behavior of someone wouldn't be illegal. To look at some vignettes of implementing ordinance using SMC 19.50.020A(2)(a):

> *Remaining for prolonged repetitious periods of time, not associated with ordinary recreational use of public property,* ... consuming a meal OR possessing a backpack OR luggage OR  Similar Equipment... constitute camping *when it reasonably appears...a person is using public property as a living accommodation regardless of their intent or the nature of other activities in which the person might also be engaged (SMC 19.50.020A(2)...* shall be guilty of a misdemeanor or infraction (see SMC 19.20.080(C), 19.40.130, and See SMC 1.42.010)

51. Put another way, regardless of Plaintiffs intent or the nature of other activities they are engaged in will be guilty of a crime if they are repetitively in a place possessing their backpack or consuming meals. Plaintiffs will be guilty of a crime if they repetitively come to a public place to eat a lunch - like on the sidewalk of Saint Vinnies where people get food almost everyday and people commonly eat on the sidewalk. The only reason they will be subject to criminal liability is because they don't have housing, and therefore not recreational users of public property under San Rafael's criminal enforcement scheme.

*City of San Rafael  Tries To Justify Its Legal Dragnet With An "Exception" Which City Officials Refuse to Make A Standard For.*

VERIFIED COMPLAINT  AND EX PARTE APPLICATION  FOR TRO AND PI, NOTICE OF EXPARTE APPLICATION FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023HEARING DATE: TBDFILED CONCURRENTLY WITH INDEX OF EXHIBITS - 22

52. Failure of "persistent efforts . . . to establish a standard" can provide evidence of vagueness. *United States* v. *L. Cohen Grocery Co.*, 255 U. S. 81, 91 (1921) (Quoting from Johnson v United States).

53. **City of San Rafael** refuses to establish a standard for its alleged "camping exception". The city touts the idea that people can erect isolated, semi-permanent camps public property that are not defined in SMC 19.50.030. But, when asked where those properties allegedly are, San Rafael refuses to answer **See Declaration Mendoza ¶21 Declaration Powelson ¶8**.City Councilmember Rachel Kertz laid down in the July 22nd edition of the *Pacific Sun* City Council Member: "We're not saying here's where you go next". Pressed for answers by Plaintiffs **See Dec Powelson Exhibit B ¶12** the City has not responded with any standard, and has failed to perform on its promise of an education campaign to  See Powelson ¶7 and **Dec Metz ¶12 Hensley ¶11 Boyd ¶13 Aardalen ¶13 Mendoza ¶20 Nelson ¶13 Huff ¶12,** except by providing a single page flyer that does accurately describe the broad criminalization of SMC §§19.50 and SMC §19.20.080(c) **See Dec Brian Nelson Exhibit D**. No reasonable person can understand what conduct is allowed and what is prohibited. The only thing that has been provided to some people are a vague, one page flyer that does not provide clear definitions of where people and Live **[see id, Dec Powelson ¶8**

## *SMC 19.50.020 (A) Does Not Have The Mens Rea or Scienter Requirement For Criminal Prosecution*

54. [t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *Dennis v. United States*, 341 U. S. 494, 341 U. S. 500 (1951).

55. **SMC 19.50** makes an unreasonable exception to *mens rea* rule. In **SMC 19.50.020(A)** the ordinance strikes the *mens rea* rule "shall constitute camping… regardless of their intent or the nature of other activities in which the person might also be engaged"\

56. For a homeless person - camping be constituted from just repetitively going to a bench to eat a sandwich even when they don't consider it to being camping. That is innocent, lawful behavior - that could be criminalized under this ordinance. As such, the statute is "a trap for those who act in good faith." *United States v. Ragen*, 314 U. S. 513, 314 U. S. 524 (1942).

## Third Cause of Action 42 USC §1983 – Violation of the  First Amendment Claim For Freedom of Assembly And Association Because Constitutionally Protected Expressive Activities and Free Association are Criminalized to an Unascertainable Standard. (All Plaintiffs Against All Defendants)

57. Plaintiff reincorporates the preceding paragraphs as if fully set forth herein.

58. Plaintiffs Void-for-Vagueness claim is closely associated with a violation of Plaintiffs First Amendment claims. As was found in *Coates v Cincinnati* 402 U.S. 611 (1972), "The vice of the ordinance lies not alone in its violation of the due process standard of vagueness. The ordinance also violates the constitutional right of free assembly and association. Our decisions establish that mere public intolerance or animosity cannot be the basis for abridgment of these constitutional freedoms. *See Street v. New York*, 394 U. S. 576, 394 U. S. 592; *Cox v. Louisiana*, 379 U. S. 536, 379 U. S. 551-553; *Edwards v. South Carolina*, 372 U. S. 229, 372 U. S. 238; *Terminiello v. Chicago*, 337 U. S. 1; *Cantwell v.*

*Connecticut,* 310 U. S. 296, 310 U. S. 311; *Schneider v. State,* 308 U. S. 147, 308 U. S. 161. The First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply because its exercise may be "annoying" to some people. If this were not the rule, the right of the people to gather in public places for social or political purposes would be continually subject to summary suspension through the good faith enforcement of a prohibition against annoying conduct. [Footnote omitted] Quoting from *Coates v Cincinnati* 402 U.S. 611 (1972)

59. Here, the City is finding that the existence of unhoused people "consuming meals" or "possessing backpacks" is a nuisance. But sharing meals, sitting and lying next to a friend is exercise of Free Association.

60. Here for example, Plaintiffs go to a Saint Vincent de Pauls on a regular basis to get food. Saint Vincent de Pauls gives bagged lunches. Often, Plaintiffs eat food or drink water that has provided around the side walk there. Will this "repetious … consuming meals" be something the City of San Rafael cracks down, making it a crime to drink water and eat granola bars outside of a soup kitchen? As written, the ordinance could result in that.

61. SMC 19.50 and SMC 19.20.080(c) punishes constitutionally protected conduct to an unascertainable standard, and is "unconstitutionally broad because it authorize[s] the punishment of constitutionally protected conduct." *Id.,* at 614 (See *Coates*)

# Fourth Cause of Action 42 USC § 1983 – Violation of Article 1 Section 9 Clause 3 Bill of Attainder Because SMC §§19.50 SMC 19.20.080(c) Punishes A Definable Group With Extra-Juidicial Punishment While Allowing Other Plausible Suspects To Engage In Identical Behavior. (All Plaintiffs Against All Defendants)

62. Plaintiff reincorporates the preceding paragraphs as if fully set forth herein.

63. Article 1 Section 9 Clause 3 of the United States Constitution states "No Bill of Attainder or ex post facto Law shall be passed." The clause thus prohibits all legislative acts, "no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial. . . ." United States v. Lovett, 328 U.S. 303, 315 (1946)

64. *Fletcher v. Peck,* 6 Cranch 87, 10 U. S. 138, stated that "[a] bill of attainder may affect the life of an individual, or may confiscate his property, or may do both."

65. The Bill of Attainder Clause is to be liberally construed in the light of its purpose to prevent legislative punishment of designated persons or groups. *Cummins v. Missouri,* 4 Wall. 277; *Ex parte Garland,* 4 Wall. 333; United States v. Lovett, 328 U. S. 303. Pp. 381 U. S. 447-449.

66. The prohibition of Bills of Attainders applies to the State of California through the Fourteenth Amendment.

67. Through Article I Section 7 of the California State Constitution, the City Council of the **City of San Rafael** city council is a "quasi-legislative" body with power to make ordinances with the

full force of law within the bounds of the city. By transference, **City of San Rafael** and its City Council is prohibited from passing bills of attainder.

68. SMC §§19.50 in conjunction with SMC § 19.20.080(c) is a bill of attainder inflict punishment on a discernible group – people who are unhoused and "using public property for living accommodations" – and inflicts punishment without a judicial trial, including seizure of property and deprivation of liberty as described above in this motion.

69. SMC §§19.50 in conjunction with SMC § 19.20.080(c) targets unhoused people even when the same conduct could be engaged by other plausible people just because they don't "use public property for living accommodations".

70. People with housing who are free to repetitiously consume meals, possess backpacks, and even erect tents for "recreational purposes" See SMC 19.20.020 (c ) ""*Camp" or "camping" shall not mean occupying camp facilities or using camp paraphernalia for temporary picnicking, recreating, or resting purposes."*

71. Because the infliction of punishment is only against people who are unhoused, and not people who are housed engaging in identical conduct – the ordinances target a specific targetable group for extrajudicial punishments, and is therefore a Bill of Attainder.

# Fifth Cause of Action 42 USC § 1983 Fourteenth Amendment Equal Protection Claims Because the Laws Only Apply To People Who Are Unhoused While Allowing People With Housing To Engage in Identical Conduct  (All Plaintiffs Against All Defendants)

72. The guaranty of "equal protection of the laws is a pledge of the protection of equal laws." Yick Wo v. Hopkins, 118 U. S. 356, 118 U. S. 369. As the Supreme Court found in *American Society of Journalists & Authors, Inc. v. Bonta*, "[t]he Equal Protection Clause prohibits states from denying to any person within its jurisdiction the equal protection of the laws." 15 F.4th 954, 964 (9th Cir. 2021) (citation, alteration, and internal quotation marks omitted), cert. denied 142 S. Ct. 2870 (2022).

73. For the reasons already listed above, **Plaintiffs** will be subject to unequal protection of the law. **Plaintiffs** can be subject to criminal punishment because they "use public property for living accommodations". However people with housing can engage in identical conduct because the city can deem it "ordinary recreational use".

74. This unascertainable criminalizes peoples status, and does not perform a compelling rational interest.

# Sixth Cause of Action : Violation American With Disabilities Act Because SMC 19.50 and 19.20.080(c) Disparately Impact Plaintiffs With Disabilities: ( Brian Nelson, Amalia Mendoza, Christy Cook, Eddy Metz, and Ankor Aardalen, Against All Defendants)

75. Plaintiffs reincorporate the preceding paragraphs as if fully set forth herein.

76. Title II ADA claim requires pleading that the defendant "failed to make reasonable accommodations to its program to make it accessible to disabled people as required by the ADA's implementing regulation, 28 C.F.R. § 35.130(b)(7)(i)." Id. at 1043; see also *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004) ("[A] claim of discrimination based on failure reasonably to accommodate is distinct from a claim of discrimination based on disparate impact." (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 276-77 (2d Cir. 2003))).

77. Under Disparate Impact Doctrine the Ninth Circuit has repeatedly recognized that facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced. See, e.g., Martin v. PGA Tour, Inc., 204 F.3d 994, 999-1000 (9th Cir. 2000) (holding that a golf association rule banning use of golf carts in certain tournaments violated the ADA when it failed to modify this rule for a disabled golfer with a mobility impairment), aff'd, 532 U.S. 661, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001). In Crowder v. Kitagawa, 81 F.3d 1480 (9th Cir. 1996), the Ninth Circuit held that the State of Hawaii discriminated against a class of

visually impaired plaintiffs by refusing to make modifications to a facially neutral policy requiring all animals entering the state, including guide dogs, to be quarantined for 120 days. The Ninth Circuit held that the State discriminated against plaintiffs because this facially neutral and universally enforced policy "burden[ed] visually-impaired persons in a manner different and greater than it burden[ed] others." Id. at 1484; see also *Rodde v. Bonta*, 357 F.3d 988, 998 (9th Cir. 2004) ("[I]n Crowder, we confirmed that . . . state action that disproportionately burdens the disabled because of their unique needs remains actionable under the ADA.").

78. **Plaintiff  Eddy Metz** has a torn meniscus and can barely walk and uses a walker to get around **See Dec Metz ¶6**

79. **Plaintiff  Anker Aardalen**  has a severe injury to his knee that is filling up with water, he is confined to wheelchair for most of his activities **Dec Aardalen ¶11¶12**

80. **Plaintiff  Brian Nelson**  has severed tendons from an attempted murder, he also suffers from PTSD from the same incident. He suffers diabetes and sleep apnea and requires extra car to manage his chronic conditions **See Dec Brian Nelson.**

81. **Plaintiff Christy Cook** suffers from suffers from Schizo effective Disorder **Dec Cook ¶11**

82. **Plaintiff Amalia Mendoza** suffers from complex PTSD from early childhood sexual trauma. **See Dec Mendoza**

83. **Eddy Metz, Anker Aardalen, Brian Nelson, Christy Cook and Amalia Mendoza** have requested accomodations for their disabilities to the **City of San Rafael, Chris Hess, Cristine Alilovich, David Spiller and Amy Miller**. No interactive process has occurred for these requests.

84. The new ordinance as written will disproportionately effect these people and there ability by causing further displacement and loss of property necessary for survival in a way that disparately impacts their disabilities.

85. **Christy Cook** for example, had her medications for her schizoaffective disorder by San Rafael Police in the past, and this will be more likely in the future under the new ordinance.

86. **Anker Aardalen** and **Eddy Metz** will have fewer people around him to help him move in his wheel chair, and take care of their injuries and secure food and water.

87. **All Plaintiffs** suffering from disabilities will lose critical assistance in gain food, water, shade, and access to housing services as a result of **SMC §§19.50 and SMC 19.20.080(c )** focus on isolating people from one another.

88. Because of these disabilities, the question of disparate impact will turn on how the **City of San Rafael** provide mitigating resources to mitigate the impact on these disabilities. So far, **City of San Rafael** has provided nothing.

# Seventh Cause of Action 42 USC § 1983- Fourteenth Amendment Claim Under The State Created Dangers Doctrine Because SMC §§19.50 and SMC §19.20.080© Will Deprive Plaintiffs of Access to Food, Water Shade, Bathroom, and Will Result in the Destruction of Plaintiffs Survival Gear and Camp Integrity. (All Plaintiffs Against All Defendants)

89. Under the holding of *Kennedy v. City of Ridgefield*, 439 E 3d 1055 (9th Cir. 2006), the Ninth Circuit recognizes liability under substantive due process where a state or local official act to place a person in a situation of known danger with deliberate indifference to their physical safety." To prove a cause of action

1    of under the State Created Danger Doctrine, a Plaintiff must prove  (1) "the officers' affirmative actions

2    created or exposed h[im] to actual, particularized danger that [])he would not otherwise have faced"; (2)

3    "the injury was foreseeable"; and (3) "the officers were deliberately indifferent to the known danger. "

4    *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). The third element, deliberate indifference,

5    requires "proof that a municipal actor disregarded a known or obvious consequence of his action" which is

6    "a stringent standard of fault." Id. at 1274 (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974.

7  90. The State Created Danger Doctrine for unhoused people is also undergirded with Eighth Amendment

8        Protections under *Johnson v City of Grants Pass* which holds that City's "cannot enforce its anti-camping

9        ordinances to the extent they prohibit "the most rudimentary precautions a homeless person might take

10        against the elements" *id.*

11  91. SMC 19.50 and SMC 19.20.080 (c ) are going create on a structural basis an ongoing state created danger

12        where people who have no housing or alternative shelter will be separated from food, water, bathrooms. It

13        will expose women who are victims of domestic violence to greater threats of violence, by depriving them

14        of capable guardianship against attackers [. It will expose people who are at risk of overdose, to greater risk

15        of overdose by depriving them of mutual aid of people to administer Narcan, adrenaline shots, and to call

16        emergency services to revive them from the overdose.

17  ***SMC 19.50 and SMC 19.20.080(c) will Increase Drug Overdoses By 15-25% over the***

18
19  ***next 10 years, accounting for around 1-4 deaths of unhoused people who otherwise***

20  ***could have survived and gone on to secure permanent housing.***

21

22  92. **Plaintiff Anker Aardalen** recently suffered from an accidental overdose Dec Aardalen. His life was saved

23        because people nearby to him had access to Narcan *id.*

24  93. **Plaintiff Brian Nelson** has revived multiple people at Camp Integrity to stop them from dying from

25        overdose **See Dec Nelson.** He is a trained veterinarian technician, and has the skills to administer

26        adrenaline shots which he has done to save someone at Camp Integrity îd ¶

27  VERIFIED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PI, NOTICE OF EXPARTE
28  APPLICATION FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN
     RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023HEARING DATE:
     TBDFILED CONCURRENTLY WITH INDEX OF EXHIBITS - 32

94. People being in close proximity to one another is a protective factor in stopping overdose deaths. Recent statisictial research has shown that a significant number of overdose death by unhoused people are caused by eviction and displacement events **See Dec Dr. Schonberg** ¶

95. The intention of SMC 19.50 is to spread unhoused people out and not associate with one another. The exception under SMC 19.50 requires people to camp 200 feet from one another.

96. The result of this is that when overdoses occur, people will not have access to people close by to call for emergencies, or administer Narcan and adrenaline to revive them from the overdose.

97. **Dr. Jeffrey Schonberg**, reviewing the ordinance and recent research predicts that the ordinance will cause a 15%-25% increase in overdose deaths, or around 1-4 people dying every year who otherwise could have survived and gone onto be housed.

*SMC 19.50 and SMC 19.20.080(c) will Isolate Victims of Human Trafficking and Domestic Violence and Will Greatly Increase The Likliehood They Are Victims of Rape, Human Trafficking, and Other Forms of Violence.*

98. **Plaintiffs Courtney Huff** and **Shaleeta Boyd** are unhoused in large part due to domestic violence.

99. Women survivors of domestic violence are at greater risk of violence, and rely on capable guardianship to prevent further violence. **See Dec Dr. Schonberg**

100. The ordiancne will deprive all **Plaintiffs** from their social networks which they rely on, make them easier targets for attack, and expose them to violence.

101. This violence will disproportionally impact women and victims of domestic violence.

VERIFIED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PI, NOTICE OF EXPARTE APPLICATION FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023HEARING DATE: TBDFILED CONCURRENTLY WITH INDEX OF EXHIBITS - 33

*SMC 19.50 and SMC 19.20.080(c) will Destroy Camp Integrity, and Result in People Being Deprived of Bathrooms There, as well as food water and other necessities of life.*

102. **All Plaintffs** are members of **Camp Integrity** – which is an organized camp that provides its own portable bathrooms and handwashing stations. Volunteers also drop off donations of water, food, blankets, and other necessities. District Courts have found that the deprivation of organized encampments that share resources is a state created danger. An instructive case for this court is another case filed by self-represented litigant in the case *Blain et al v California Department of Transportation.* In that case, Judge Orrick issued a temporary restraining order with the following reasons:

*"Here, there are "serious questions going to the merits," Cottrell, 632 F.3d at 1132, that the state's imminent removal of the plaintiffs, when done without sufficient warning or plans for shelter, would expose them to unjustifiable dangers they otherwise would not face. Cf. Patel, 648 F.3d t 971–72; Hernandez, 897 F.3d at 1133. The first notice of the removals that appears in the record was on July 15, 2022, giving them just a few days' warning. See, e.g., Dkt. No. 2-2, Ex. N. Yet many of the plaintiffs have planted deep roots at Wood Street. Many have been there for significant periods. See, e.g., Dkt. No. 2-1, Ex. A at 5 (six years); id., Ex. C at 14 (four years). They have erected shelters, acquired possessions, and built connections with others. See, e.g., id., Ex. A at 5. The encampment not only offers shelter from elements but also facilities for hygiene. See, e.g., id. Removing the plaintiffs from this environment in a hurried manner without adequate plans to provide housing threatens to deprive them of their only sure source of shelter, safety, and the resources that come with it" Quoting from Blain et al v California Department of Transporation ND- 3:22-cv-04178-WHO Dkt. No. 40 (ORDER GRANTING TRO)*

103. Here, **Camp Integrity** provides all **Plaintiffs** with portable bathrooms and a handwashing station, [See **Dec Barrow**] and also provides support, donations of water, food, and guardianship of violence.

104. If the **City of San Rafael** deprives **Plaintiffs** of their acces to **Camp Integrity** and the health and hyiegene protections it provides with alternatives, then **All Plaintiffs** will be exposed to particularized dangers with deliberate indifference.

# If the Court Does Not Intervene Plaintiff Will Suffer Irreparable Harm, Including Injury, Death, Violence as well as Wrongful Arrest and The Oppression That Comes From Continuous Threat of Criminal Prosecution under SMC §§19.50 SMC §19.20.080(c)

105. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v. Sessions,* 872 F. 3d 976, 994 (9th Cir. 2017). If the Ordinance is passed, **all Plaintiffs** and all unhoused people will suffer a violation of their constitutional violation by having the threat of unjust criminal prosecution hanging above our heads.

106. **Being exposed to safety and health threats by dint of governmental action with short notice meets the irreparable-injury element. Cf. Santa Cruz Homeless Union v. Bernal, 514 F. Supp. 3d 1136, 1145 (N.D. Cal. 2021). (Quoting from** *Blaine et al v California Department of Transportation* , ND- 3:22-cv-04178-WHO, Dkt No 40) Order GRANTING TRO.

VERIFIED COMPLAINT AND EX PARTE APPLICATION FOR TRO AND PI, NOTICE OF EXPARTE APPLICATION FOR TRO AND PI FOR INJUNCTIVE RELIEF TO HALT IMPLEMENTATION OF SAN RAFAEL MUNICIPAL CODE §§19.50 AND SMC 19.20.080(C) ON AUGUST 16TH 2023HEARING DATE: TBDFILED CONCURRENTLY WITH INDEX OF EXHIBITS - 35

# Balance of Equities and Public Interest Both Tip Sharply in Plaintiffs Favor Because Defendants Are Failing To Establish Standards for The Ordinance or Genuinely Educate Plaintiffs About What SMC §§19.50 and 19.20.080( c) Will Actually Criminalize

107. **City of San Rafael** through its director of homeless services **Chris Hess** has promised to provide education about the rules, as well as a weekly popup service offering at Camp Integrity **Dec Powelson ¶8. Hess** and the **City of San Rafael** has failed to perform on that promise except by providing a one page flyer that does not accurately reflect what SMC §§19.50 actually prohibits [**See Dec Brian Nelson, ¶16**]. The flyer only talks about the "exception to camping", even when the city refuses to define what properties the exception applies to **Dec Powelson ¶8**

108. However as shown above, SMC §§19.50 in conjunction with SMC §§19.20.080( c) are far more than a requirement people set up tents 200 feet away from one another. It is prohibition of people repetitiously being with each other, consuming meals or possessing backpacks. The flyer in Nelson ¶16 gives a vague promise that people will be able to set up campsites at undefined properties – but it does not inform impacted members of the unhoused community about the broad ways the new ordinances incur criminal liability for innocuous conduct.

109. The fact that the promises of the **City** are not being performed show that at a minimum, both the public interest and balance of equities tip sharply in **Plaintiffs** that the **City of San Rafael** much clearly spell out its ordinances and cures the infirmities of its laws.

# Conclusion

110. SMC §§ 19.50 and SMC §19.20.080(c) are not just an attack on our rights as people who don't have housing – it as an attack on United States Constitution. If local governments are allowed to implement such pernicious laws, the Constitution will cease to have meaning. The result is chaos, and degradation of the rule of law. The court should intervene and halt implementation SMC §§19.50 and SMC §§19.20.080 (c ).

# Prayer for Relief

(a) The Court issue a temporary restraining order and preliminary injunction enjoining defendants from enforcing SMC §§19.50 and SMC §19.20.080 (c )

(b) The Court issue a temporary restraining order and preliminary injunction enjoining defendants from destroying Camp Integrity, and otherwise displacing residents in a manner that violates their constitutional rights.

(c) The Court issue a permanent injunction from violating plaintiffs Civil Rights as pleaded above.

(d) Plaintiffs demand trial by jury.

(e) The court appoint plaintiffs an attorney as the court deems necessary for effective justice.

(f) The court appoint **Camp Integrity** with an attorney to represent it as an unincorporated association.

# Verification

See Attached Page.

**Verification**

Under Federal Rules of Civil Procedure 11, We the undersigned, submit the complaint against the City of San Rafael and its agents and swear under penalty of perjury that our complaint is made to do substantial justice and for no improper purpose.

1. Name: Jeff Groue
   a. Signature
   b. Date: July 25 2023

2. Name: Courtney E. Hupe
   a. Signature
   b. Date: July 25, 2023

3. Name: Eddie Metz
   a. Signature
   b. Date: 7 25 23

4. Name:
   a. Signature
   b. Date: 7-25-23

5. Name: Amalia A. Mendoza
   a. Signature
   b. Date: 7-25-23

6. Name: Floyd Barron Jr.
   a. Signature
   b. Date: 8/3/23

7. Name: Anker Aardalen
   a. Signature
   b. Date: 8/03/2023

VERIFICATION - 1

8. Name:
    a.  Signature
    b.  Date: 8/7

9. Name:
    a.  Signature
    b.  Date:

10. Name:
    a.  Signature
    b.  Date: 8/04/23

11. Name: Brian Neison
    a.  Signature
    b.  Date: 8-7-23

12. Name:
    a.  Signature
    b.  Date:

13. Name:
    a.  Signature
    b.  Date:

14. Name:
    a.  Signature
    b.  Date:

15. Name:
    a.  Signature
    b.  Date:

16. Name:
    a.  Signature
    b.  Date:

VERIFICATION - 2

1

2   Residents of Camp Integrity- PRO SE
773 Lincoln Avenue, San Rafael CA 94901
3   PO BOX 2217, San Rafael CA 94912-2217
CampIntegritySanRafael@yahoo.com

4
                    UNITED STATES DISTRICT COURT
5
                    DISTRICT OF NORTHERN CALIFORNIA
6
7   SHALEETA BOYD, AMALIA MENDOZA, FLOYD      Case No.: Number
    BARROW, EDDY METZ, CHRISTY COOK, ANKER
    AARDALEN, COURTNEY HUFF, JEFF GROVE,
8   DONALD HENSLEY, CAMP INTEGRITY            PROOF OF SERVICE

9              Plaintiff,

10  vs.

11  CITY OF SAN RAFAEL, CRISTINE ALILOVICH,
    CHRIS HESS, DAVID SPILLER, AMY MILLER,
12  KATE COLIN, ELI HILL,  MARIBETH BUSHEY,
    RACHEL KERTZ.
13
               Defendant
14

15

16          I Robbie Powelson, am over the age of 18 and not a party to this action.

17          On August 11th, around 1:00pm, I personally served a copy Plaintiffs Exparte of Application for

18  TRO and Preliminary Injunction and Complaint for Injunctive Relief, as well as Plaintiffs Index of Exhbits,

    Attached Exhibits, and Motion for Accomodations on **City of San Rafael** at the City Clerks Office at 1400 Fifth
19
    Street, San Rafael CA 94901.
20
            My address is 1001 Bridgeway #611 Sausalito CA 94965.
21

22

23          I swear the foregoing under penalty of perjury

24          /s/ Robbie Powelson

25          08/11/23

26

27

28

PROOF OF SERVICE - 1