UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHALEETA BOYD, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF SAN RAFAEL, et al.,<br><br>    Defendants. | Case No. 23-cv-04085-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 190 |

## I.    INTRODUCTION AND BACKGROUND

To address a growing encampment of unhoused individuals and related health and safety concerns, Defendant City of San Rafael enacted an ordinance ("Chapter 19.50") that limited campsite sizes and their locations. Plaintiffs brought suit alleging the ordinance violated various statutory and constitutional rights.

After considering the likelihood of irreparable injury, the balance of hardships and the questions raised on the merits, this Court granted a preliminary injunction limiting enforcement of the ordinance. The preliminary injunction required that campsites with up to four persons could take up to 400 square feet and the required separation between campsites be limited to 100 feet. The preliminary injunction required certain assistance be provided to campers, and that any Plaintiff who submitted a request for disability accommodations not be evicted until that request was addressed. The Court provided a substantive analysis of the legal claims, indicating certain aspects of the ordinance raised serious legal questions.

In response to the issues raised by the preliminary injunction, Defendant amended Chapter 19.50. The amendments allowed campsites up to 200 square feet for one individual and up to 400 square feet for four individuals, and rather than requiring each camp site be separated by 200 feet

1 from another, the amendments imposed a simple 10-foot setback from other campsites, public

2 utilities, and private property. There also is a *mens rea* requirement for violating camping

3 regulations.

4 Defendant now moves to dismiss Plaintiffs' complaint on grounds of mootness and

5 alternatively moves to dissolve the preliminary injunction.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. Factual Background

The case concerns an amended ordinance by Defendant the City of San Rafael. Defendant previously enacted San Rafael Municipal Code ("SMC") 19.50 ("Chapter 19.50") that prohibited camping, including sleeping, on certain public property without exception and imposed size, density, and proximity limitations on campsites. Docket No. 98 at 2:10-12. Chapter 19.50 identified certain land in San Rafael as camping-prohibited with no exception, while all other lands permit camping if there is no alterative shelter. *Id.* at 2:24-26. Plaintiffs in the case at bar include "Camp Integrity," a community of campers located in San Rafael's Mahon Creek Path, the San Rafael Homeless Union, and thirteen residents of the Mahon Creek Path. *Id.* at 2:12-14.

To address the large and growing encampment, Defendant implemented the Chapter 19.50 ordinance, which proposed to break up large encampments such as Camp Integrity in Mahon Creek Path and dispersed individuals throughout San Rafael. *Id.* at 6:13-15. Chapter 19.50 limited campsites to one or two individuals and isolated each campsite by requiring a 200 feet separation between each. *Id.* at 2:25-26. Those who violated Chapter 19.50 were punishable with up to six months in jail and/or a $500 fine. *Id.* at 3:1-2. At the start of litigation, Defendant noted there were about 33 tents in the Plaintiffs' encampment. Docket No. 98 at 5:18-19. As of October 2023, there were 61 tents. *Id.* at 5:18-19. As of July 2024, there are 67. *See* Docket No. 187-1 at ¶ 5 (Hess Decl.).

The Court issued a preliminary injunction after determining that: Chapter 19.50 was likely to cause irreparable harm, the balance of hardships tipped sharply in Plaintiffs favor, Plaintiffs raised serious questions on the merits of their legal rights, and the public interest was served by a narrowly tailored preliminary injunction. Docket No. 98 at 48. The preliminary injunction limited

1    and modified Defendant's ability to enforce the ordinance. *Id.* at 48:24-26.  For individuals who
2    established standing and reside in the Mahon Creek Path encampment: Defendant must allow
3    them to have up to 400 square feet campsites for up to four individuals.  The maximum required
4    separation between campsites would be 100 feet.  Defendant must help campers who need to move
5    to a designated space, designate permissible campsites, provide a process for campers to find
6    permitted campsites, and not evict individuals who submitted reasonable requests for
7    accommodations.  *Id.* at 48:24 and 49:16.

8    After the preliminary injunction went into effect, the San Rafael City Council voted to
9    amend Chapter 19.50 to address issues raised in the Court's order.  *See* Docket No. 152 at 8:14-15.
10   On May 6, 2024, Defendant amended Chapter 19.50 to allow campsites of 200 square feet for one
11   person and 400 square feet for four individuals, a 10-foot setback from other campsites (rather
12   than a 100 feet distance requirement), and a *mens rea* requirement for violating camping
13   regulations.  *Id.* at 8:18-27 and 9:1-7.

14   B.   Procedural Background

15   On August 11, 2023, Camp Integrity and ten individual plaintiffs filed their complaint and
16   moved for a temporary restraining order and preliminary injunction.  *See* Docket No. 1.
17   Defendants includes the City of San Rafael, as well as City Manager, Chief of Police, Assistant
18   City Manager, Director of Public Works, Mayor of the City, and City Council Persons.  *Id.* at 11-
19   12.  Four days later, Judge Thompson granted Plaintiffs' request for a temporary restraining order
20   halting enforcement of the ordinance.  *See* Docket No. 19.  The TRO was later extended.  *See*
21   Docket No. 98 at 5:5-6.

22   On October 19, 2023, the Court granted in part and denied in part Plaintiffs' motion for a
23   preliminary injunction.  *See* Docket No. 98.  In response, on May 10, 2024, Defendant filed a
24   notice for a motion to dismiss or in the alternative to dissolve the preliminary injunction.  *See*
25   Docket No. 152.

26   Now pending is Defendant's motion to dismiss Plaintiffs' complaint pursuant to Fed. R.
27   Civ. P. 12(b)(1) for lack of subject matter jurisdiction and in the alternative a motion to dissolve
28   the preliminary injunction.  *See* Docket No. 152.  Plaintiffs contend that Defendant failed to abide

by the injunction and oppose the amended version of the ordinance due to its burden on the unhoused population. *See* Docket No. 161 at 14:17-20.

At the July 15, 2024 motion hearing, the Court ordered Defendant to file supplemental briefing including an updated map to clarify the factual dispute of space alongside the Mahon Creek Path. *See* Docket No. 186 ("Minute Order"). Defendant submitted an updated map and a supporting declaration, Docket No. 187, and Plaintiffs failed to file a response to the updated map.

### III.     LEGAL STANDARDS

A.     Motion to Dismiss

Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The "irreducible constitutional minimum" of standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the Defendants, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins* ("*Spokeo II*"), 136 S. Ct. 1540, 1547 (2016). These three elements are referred to as, respectively, injury-in-fact, causation, and redressability. *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleadings stage means "clearly . . . alleg[ing] facts demonstrating each element." *Spokeo II,* 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). In deciding the motion, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth*, 422 U.S. at 501; *see also Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.,* 256 F.3d 879, 882 (9th Cir. 2001) (in assessing standing, the Court may consider "the complaint and any other particularized allegations of fact in affidavits or in amendments to the complaint").

B.     Motion to Dissolve Preliminary Injunction

The party moving to dissolve the preliminary injunction bears the burden of establishing a significant change in facts or law warrants dissolution of the injunction. *Sharp v. Weston*, 233 F.3d

1166, 1170 (9th Cir. 2000). If this showing has been made, the court must then address whether this change "warrants…dissolution of the injunction." *Id.* The latter inquiry is guided by the same criteria that governs the issuance of a preliminary injunction. *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019).

## IV. DISCUSSION

### A. Mootness

Defendant argues that the Court should grant its motion to dismiss because the amendments to Chapter 19.50 render the Plaintiffs' lawsuit moot. Docket No. 152 at 11:2-3. Specifically, amended Chapter 19.50 addresses all issues in the First Amended Complaint ("FAC"). *Id.* at 11:18-19. Defendant further argues that changes to the ordinance eliminate potential Fourteenth Amendment issues because unhoused individuals will be able to camp even closer together than the preliminary injunction previously allowed. *Id.* at 11:7-10.

Plaintiffs oppose the motion and assert that Defendant failed to establish mootness for three reasons. Docket No. 161 at 9:26. First, the new anti-camping ordinance is as objectionable today as it was when it first began. *Id.* at 11:1-2. Second, there is a reasonable expectation that the legislative body will reenact the challenged provision. *Id.* at 9:18-23. Third, to the extent that Defendant has given Plaintiffs space for encampments, much is far away from the center of the City of San Rafael, which cuts off meaningful access to necessary resources. *Id.* at 11:16-22.

The Court **GRANTS** Defendant's motion to dismiss for the reasons below.

A case is presumed to be moot when there is repeal, amendment, or expiration of legislation, unless there is a reasonable expectation that the legislative body is likely to enact the same or similar legislation in the future. *Board of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1197 (9th Cir. 2019). Reasonable expectation has been interpreted to mean something more than a mere possibility or theoretical possibility in the record. *Brach v. Newsom*, 38 F.4th 6, 14 (9th Cir. 2022) (mere possibility of an activity occurring is too remote to evade mootness).

#### 1. Presumption of Mootness

Amendments to the Chapter 19.50 ordinance that address Plaintiffs' previous complaints

1    establish a presumption of mootness.  The original ordinance that was the subject of the FAC is no
2    longer law.  The presumption of mootness obtains.

### 2. No Reasonable Expectation of Reenactment

The party challenging the presumption of mootness must demonstrate there is a reasonable expectation that the law will be reenacted; although the plaintiff need not show that the enactment of an identical or similar legislation is "virtually certain," more than a mere speculation is required.  *City of Mesquite v. Aladdin's Castle Inc.,* 455 U.S. 283, 289 (1982); *see also Rentberry, Inc. v. City of Seattle*, 814 Fed. Appx. 309, 309 (9th Cir. 2020) (appellants failed to show a reasonable expectation that Seattle will enact an identical or similar ordinance in the future); *Cocina Cultura LLC v. Oregon Dep't of Admin. Servs.*, No. 3:20-cv-01866-IM, 2021 WL 3836840 at *6, 2021 U.S. Dist. LEXIS 162629 (D. Or. Aug. 27, 2021) (enactment of a one-time emergency fund is insufficient to show a reasonable expectation).  The burden is on the plaintiff to show a reasonable expectation that the government will reenact its regulation.

Plaintiffs are unable to show a reasonable expectation of reenactment of the original Chapter 19.50.  The amended ordinance was duly enacted, and it is comprehensive and clearly designed to address the legal concerns raised by the Court.  At the Court's request, Defendant has provided a map showing implementation of the amendment.  *See* Docket No. 161 at 11:1-5.  In particular, Defendant has provided a clear map showing 203 spaces available for the 67 tents.  *See* Docket No. 187-1 at ¶ 5 (Hess Decl.).  Defendant's behavior since enacting the amended Chapter 19.50 indicates no expectation of reenacting the original Chapter 19.50.

If a Defendant breaks a pattern of previous behavior, that generally is sufficient to show there is no reasonable expectation of reenactment.  *See California Rental Housing Association v. Newsom*, No. 2:21-cv-01394-JAM-JDP, 2022 WL 7099722, *1 (E.D. Cal. 2022).  In *California Rental Housing* Association, the Court held that Assembly Bill 2179 broke a previous pattern of Assembly Bills which extended the moratorium on the enforcement of unlawful detainer eviction orders against renters affected by COVID-19 "on and on in an unbroken train."  *Id.*  Since the State enacted Assembly Bill 2179, it allowed earlier bills to expire and "suggests, therefore, that it is unlikely to renew similar restrictions in the future."  *Id.*

6

1	As in *California Rental Housing Association*, here, there is no reasonable expectation of
2	reenactment of the original Chapter 19.50 ordinance.  Similar to how Assembly Bill 2179 broke
3	the State's previous behaviors, the amended Chapter 19.50 does the same here.  Amended Chapter
4	19.50 removes the strict distance requirements, allots habitable space on a map for the unhoused,
5	and implements changes per the preliminary injunction.  *See* Docket No. 152 at 8:18-27 and 9:1-
6	13.  Thus, amended Chapter 19.50 and its break from Defendant's previous patterns serves as
7	proof of there being no reasonable expectation of reenactment.

8	Defendant's past actions do not suggest that Defendant will reinstate its original ordinance
9	or specific provisions within, nor is there any indication that it would do so now.  The instant case
10	is unlike *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  In *City of Mesquite
11	v. Aladdin's Castle, Inc.*, there, a City licensing ordinance prohibited a licensee from allowing
12	children under 17 years of age to operate amusement devices unless accompanied by a parent or
13	legal guardian.  *Id.* at 186.  The ordinance also required consideration of whether a license
14	applicant had any "connections with criminal elements." *Id.*  Despite initially exempting the
15	parent company of the coin-operated amusement establishment called Aladdin's Castle from the
16	age prohibition, the City of Mesquite then refused to grant the license because the chief of police
17	concluded that it was connected to criminal elements.  *Id.* at 287.  Aladdin then obtained an
18	injunction requiring the City of Mesquite to issue it a license.  *Id.* at 286-87.  Less than a month
19	later, the City of Mesquite adopted a new ordinance repealing Aladdin's exemption, reinstating the
20	17-age requirement, and later while the case was on appeal, eliminating the phrase "connections
21	with criminal elements."  *Id.* at 288-89.  The Supreme Court observed that even though the City of
22	Mesquite removed the phrase "connections with criminal elements," it could "reenact precisely the
23	same provision again" because it did so with respect to the age prohibition.  *Id.*  Therefore, the
24	case was not moot.  *Id.*

25	Unlike in *City of Mesquite*, here there is no historical evidence that Defendant has
26	reinstated its original ordinances or specific provisions within, nor is there any indication that it
27	would do so here.  In *City of Mesquite*, City of Mesquite had reenacted the age restrictions that it
28	previously removed, which casted doubt on its later actions.  *Id.*  In contrast, here, Defendant has

7

explicitly stated that it will not revert to its old ordinance. Defendant's City Manager asserted that "The City has no intention of reverting to the prior version of Chapter 19.50 should the Court lift its Preliminary Injunction." *See* Docket No. 152 at ¶ 3 (Alilovich Decl.). While Plaintiffs contend that the Mayor's recent statements of having "additional options to address homelessness in our community," nothing points to a plan of reimplementation. *See* Docket No. 185 at 2:10-15. To the extent the Mayor's comments were informed by the Supreme Court's recent decision in *City of Grants Pass, Oregon v. Johnson*, 144 S. Ct. 2202, 2218 (2024) rejecting the Eighth Amendment claim asserted by the unhoused in that case, here, the parties are well aware that the legal concerns expressed by this Court do not rely on the Eighth Amendment. Previously, the Court held that Plaintiffs' Eighth Amendment claim under *Martin v. City of Boise*, 920 F.3d 584, 617 (9th Cir. 2019) was insufficient to raise serious questions. *See* Docket No. 98 at 46:7-9. Instead, the Court addressed other bases: the ADA, the Fourteenth Amendment's state created danger doctrine, and Fourteenth Amendment due process rights. *Id.* at 31 at 9-12. Defendant is aware those issues would remain at play were it to reenact the former ordinance.

### 3. The Amended Ordinance Does Not Raise the Same Issues

Although Plaintiffs claim the amended Chapter 19.50 is just as objectionable as the original ordinance, that is not the case. The amended ordinance allows for clustering of individuals and campsites in a manner which mitigates the dangers potentially facing isolated unhoused individuals. It also imports a *mens rea* requirement: only individuals who willfully violate the ordinance can be charged. This addresses the due process concerns identified by the Court. And there is no showing that the amended ordinance negates the rights of individuals with disabilities access to reasonable accommodations. *See* Docket No. 152 at 7:1-14. Also, the map shows that there are ample campsites proximate to the city center. Defendant's updated map reveals sufficient space for the unhoused to "cluster" within blue areas. *See* Docket No. 187-1 at ¶ 5 (Hess Decl.). It shows that under the amended ordinance, there are 203 spaces in the City of San Rafael for the unhoused population to occupy and maintain a close community. *Id.* at ¶ 6. Plaintiffs do not contest the sufficiency of the updated map.

In short, the legal concerns identified by the Court in response to the original ordinance

8

and the FAC have been addressed, and the case based on those concerns is moot.

    4.    <u>Dissolution of the Preliminary Injunction</u>

Defendant has established a significant change in facts or law which warrants dissolution of the injunction. *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). In particular, the case is now moot, and thus the Court no longer has jurisdiction to maintain the preliminary injunction which was based on the now moot FAC. Moreover, where an amended ordinance gives the relief that was sought from the original ordinance and moots the case, the preliminary injunction is rendered moot as well. *Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020) (holding that a preliminary injunction was moot because of revisions to a challenged statute gave plaintiff the very relief their original lawsuit sought).

## V. CONCLUSION

The Court GRANTS the City's motion to dismiss and dissolves the preliminary injunction.

**IT IS SO ORDERED**.

Dated: August 7, 2024

_____
EDWARD M. CHEN
United States District Judge